UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALEXANDER J. ALFONSO,

                   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

**MEMORANDUM AND ORDER**

20-CV-03914 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

    Alexander J. Alfonso ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI of the Act. Plaintiff moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings remanding the case for a new hearing and decision. (*See* Pl.'s Mot. J. Pldgs., ECF No. 20.) Defendant cross-moves for judgment on the pleadings affirming the Commissioner's decision. (*See* Def.'s Mem. L. Supp. Cross-Mot. J. Pldgs., ECF No. 22.)

    For the reasons stated on the record at the January 20, 2021 oral argument and as set out below, Plaintiff's motion is GRANTED, and Defendant's motion is DENIED. The case is REMANDED for further proceedings consistent with this memorandum and order.

## BACKGROUND

    On January 2, 2018, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning December 1, 2017. (R. 140–41, 209, 213, 241.) The applications were

1

denied, and Plaintiff requested a hearing. (R. 158–66.) Plaintiff appeared pro se and testified before Administrative Law Judge ("ALJ") Sandra McKenna on April 12, 2019. (R. 106–39.) On May 23, 2019, the ALJ rendered a decision in which she found that Plaintiff was not disabled. (R. 17–35.) Plaintiff requested review by the Appeals Council, which was denied on June 23, 2020, making the ALJ's decision the final decision of the Commissioner. (R. 1–7, 208.) On August 24, 2020, Plaintiff appealed the decision to this Court.

Plaintiff alleges disability due to diabetes, hypertension, a back problem, a left shoulder/arm problem, and a left knee problem. (R. 209, 213, 241.) Plaintiff previously worked part-time as a Family Dollar cashier in 2017, as a public library maintenance worker from 2008 through 2017, and as a private security guard from 2001 through 2006. (R. 24, 114–118, 242.) He has a high school education and no vocational training. (R. 24, 127.) At the time of the hearing, Plaintiff lived in a shelter system motel where he shared a room with another individual. (R. 24, 113.) Plaintiff reported that he does not take public transportation and instead travels by medical transport. (R. 24, 113, 135.) Although Plaintiff was unrepresented at his hearing, he has since obtained counsel.

## DISCUSSION

Plaintiff challenges the Commissioner's decision on three grounds: (1) that the ALJ failed to develop the record; (2) that remand is required to consider new evidence submitted to the Appeals Council; and (3) that the ALJ's RFC determination was not supported by substantial evidence. (*See* Pl.'s Mem. L. Supp. Mot. J. Pldgs. ("Pl's Mem.") at 8–21, ECF No. 21.) "Before determining whether the Commissioner's conclusions are supported by substantial evidence[,] ... '[the Court] must first be satisfied that the claimant has had a full hearing under the ... regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran*

*v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (second and third alterations in the original) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

### I. The ALJ's Duty to Develop the Record

"ALJs have an affirmative duty to develop the record." *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 645 (2d Cir. 2020) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination." *Id.*; *see also* 20 C.F.R. § 404.1512(b). When there is an obvious or "clear gap[ ]" in the record, the ALJ is required to seek out missing medical records, even when a party is represented by counsel. *Id.* (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)). Where the plaintiff proceeds *pro se*, the ALJ's duties are heightened. *Moran*, 569 F.3d at 113. Indeed, the "ALJ must adequately protect a pro se claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." *Id.* (internal quotation marks and alterations omitted).

#### A. Obvious Gaps in the Record

Here, the ALJ erred by failing to fully develop the record in light of obvious gaps. That the ALJ failed to meet her duty is clear from the hearing transcript and the medical record. Over the course of the hearing, the ALJ did not ask any other questions that would confirm or clarify the completeness of the medical record. The ALJ did not question Plaintiff about his physicians or the frequency of his medical appointments. The only time one of Plaintiff's doctors was even mentioned during the hearing was when the ALJ asked Plaintiff who had prescribed him medical transportation and Plaintiff confirmed that it was Dr. Caro. (R. 135.) Plaintiff testified that he was prescribed certain medication for his pain, that he may have received cortisone shots, that

3

surgery had been recommended, and that doctors have considered prescribing him a home health aide and home therapy but are waiting for him to move out of the shelter system. (R. 123–26.) But the ALJ did not ask which doctors prescribed his medication, administered the shot(s), recommended surgery, or were considering a prescription for a home health aide. (*Id.*) Furthermore, the ALJ asked Plaintiff about his treatment and the side effects of his medications but did not ask about the severity and frequency of his pain. (R. 121–25). Plaintiff raised the issue of his pain several times during the hearing—to explain that he needs to lay down throughout the day, why he has trouble sleeping, and why he stopped working. (R. 121, 122, 126.) In response, the ALJ directed Plaintiff back to her line of questioning regarding his medications and their side effects, or whether he voluntarily left his prior employment. (R. 121, 122, 126.) Plaintiff also stated that he is "always in pain even with medication, even to sleep, take a bath, everything." (R. 126.) The ALJ responded, "okay" and asked if there was anything else Plaintiff wanted to tell her regarding his injury. (R. 126.)

Furthermore, there is a dearth of evidence of any effort on the ALJ's part to seek records from Plaintiff's physicians. Instead, the ALJ relied entirely on the documents provided by the pro se Plaintiff and his statements that the record was complete. At the outset of the hearing, Plaintiff stated that there was "a lot missing" from the file. (R. 110.) The ALJ then admitted into the record the following documents provided by Plaintiff: exhibits 1-A (disability determination transmittal dated 4/4/2018); 2-A (disability determination transmittal dated 4/4/2018); 3-A (disability determination explanation); 4-A (same); 1-B (notice of disapproved claims, dated 4/4/18); 2-B (request for hearing by ALJ); 3-B (request for hearing acknowledgment letter; 4-B (hearing notice, dated 1/9/2018); 5-B (acknowledgement of hearing notice, dated 1/23/2019); 6-B (notice of hearing reminder, dated 3/29/2019); 1-D (DIB

4

application, dated 1/30/2018); 2-D (SSI application, dated 1/30/2018); 3-D (certified earnings records, dated 10/29/2018); 4-D (detailed earnings query, dated 10/29/2018); 5-D (summary earnings query, dated 10/29/2018); 6-D (new hire, quarter wages, unemployment query, dated 10/29/2018); 7-D (certified earnings records, dated 4/4/2019); 8-D (detailed earnings query, dated 4/4/2019); 9-D (new hire, quarter wages, unemployment query, dated 4/4/2019); 10-D (summary earnings query, dated 4/4/2019); 1-F (consultative examination report, dated 3/6/2018); and 2-F (Dr. Caro treatment records).[1]  (*Id.*)  The ALJ then asked Plaintiff if there were any additional records that she needed to obtain after the hearing.  Plaintiff responded that there were not.  The ALJ asked if the documents before her were all of the treatment notes.  Plaintiff responded that they were.  (R. 112.)  At the end of the hearing, the ALJ stated that she would go over all of the documents Plaintiff provided that day and asked Plaintiff to confirm that there were no other documents he needed her to obtain.  Plaintiff responded, "not at the moment."  (R. 134.)

After the admission of documents into the record at the hearing, the record upon which the ALJ's decision was based contained the following documents related to Plaintiff's medical condition and treatment:

| Date | Citation | Document Description | Indication of Gaps |
|---|---|---|---|
| 1/14/2018[2] | R. 320 | Letter from Dr. Caro listing Plaintiff's conditions and stating | |

---

[1] The documents contained in exhibit 2-F are (1) a May 3, 2018 letter from Dr. Caro indicating that he treated plaintiff for severe low back pain, lumbar radiculopathy, diabetes mellitus type II, hypertension, inflammatory polyarthropathy, and left knee osteoarthritis, and stating that Plaintiff is totally disabled and unable to work at all for the rest of his life (R. 297); (2) March 19, 2018 left knee and lumbar spine MRI reports ordered by Dr. Caro and performed by a radiologist at Lennox Hill Radiology (R. 298-99); and (3) an undated patient summary listing Dr. Caro as Plaintiff's PCP, listing Plaintiff's medical history, medications, and vitals (R. 300).

[2] It is likely this date is incorrect, because in an opinion submitted to the Appeals Council, Dr. Caro stated that he first saw Plaintiff in March 2018.  Furthermore, Dr. Caro submitted a letter dated January 15, 2019 (likely after realizing that the letter from January 14 had the wrong year).  However, as far as the ALJ was concerned, the record

|  |  | that Plaintiff is totally disabled and will not be able to work at all for the rest of his life |  |
|---|---|---|---|
| 3/6/2018 | R. 290-94 | Examination report from Dr. Meisel[3] |  |
| 3/13/2018 | R. 295–96 | X-rays of left shoulder (normal) and lumbar spine (degenerative changes) |  |
| 3/18/2018 | R. 298, 321, 299, 322-23 | MRIs of left knee and lumbar spine | MRIs requested by Dr. Caro but there were no progress notes in the record from a visit with Dr. Caro that pre-dates these MRIs |
| 4/3/2018 | R. 144–49 | Disability determination explanation signed by G. Feldman (147) |  |
| 5/3/2018 | R. 297, 332, 333–34 | Letter from Dr. Caro listing Plaintiff's diagnoses and stating that Plaintiff is disabled and will be unable to work for the rest of his life |  |
| 7/17/2018 | R. 342–45 | Hospital discharge papers with MRI info for lumbar spine |  |
| 8/14/2018 | R. 346 | Hospital discharge papers |  |
| 10/9/2018, 10/15/2018 | R. 301–18 | Human Resources Administration intake forms, including assessment by Dr. Cadet | Indicates appointments with Dr. Caro on 10/3/18 and 11/16/18 (R. 303) but progress notes from those dates were not in record |
| 11/16/2018 | R. 336–37 | Progress notes from visit with Dr. Caro | This is the only visit with Dr. Caro for which there are progress notes in the record. |
| 11/18/2018 | R. 328 | HHS note from case manager | States that Plaintiff had appointment with his "regular doctor" that day and an |

before her reflected that Dr. Caro had been treating Plaintiff at least since January 2018. This is further reason to suspect that there were additional records of Plaintiff's treatment with Dr. Caro, and to seek to obtain such records.

[3] Although Plaintiff argues that the ALJ erred in relying on Dr. Meisel's opinion because Dr. Meisel failed to review the MRI reports (Pl.'s Mem. at 14), this argument is unavailing because the MRIs were not performed until after Dr. Meisel examined Plaintiff. But Plaintiff is correct that the Second Circuit has cautioned ALJs against "rely[ing] heavily on the findings of consultative physicians after a single examination." (*Id.* (citing *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).)

| | | | appointment with an orthopedics doctor on 11/26/2018 |
|---|---|---|---|
| 11/27/2018 | R. 347–48 | Physical therapy outpatient referral and appointment information for 5/14/2019 appointment with Vanderbilt clinic | |
| 12/31/2018 | R. 324–27 | MRIs of left shoulder and right shoulder | Ordered by Dr. Caro, but there were no progress notes in the record from the appointment at which he ordered the MRIs |
| 1/15/2019 | R. 319 | Letter from Dr. Caro regarding Plaintiff's diagnoses and stating that plaintiff requires proper bed accommodation | |
| 3/14/2019 | R. 338–41 | Hospital discharge papers | |
| Undated | R. 300 | Patient Summary by Dr. Caro | Indicates visits with Dr. Caro on 3/5/2018 and 3/26/2018, but the record contained no progress notes from these dates |

As noted in the above chart, there are several gaps in the record that the ALJ failed to look into or develop. Significantly, the record contains progress notes from only a single visit with Dr. Caro—on November 16, 2018. (R. 336–37.) Yet, there are references in the record to multiple other visits with Dr. Caro, for which there were no progress notes in the record. The ALJ incorrectly stated in her decision that the record contained notes from Dr. Caro, dated January 14, 2018. (R. 26.) The document to which she refers is the letter from Dr. Caro stating that Plaintiff was disabled and unable to work. And although the ALJ referred to Dr. Caro's notes dated March 26 and May 3, there are no progress notes from visits on these dates. (R. 26.) Rather, the undated patient summary indicates that visits occurred on those dates, and includes some basic information, such as medications prescribed, from those visits. (R. 300.) The ALJ

does not appear to have made any effort to obtain the detailed progress notes from visits on those dates. Indeed, the undated patient summary references certain dates such as March 5, 2018 and March 26, 2018, indicating that Dr. Caro saw Plaintiff on those dates. However, there were no treatment notes in the record from those dates. Furthermore, the MRIs performed on March 19, 2018 were ordered by Dr. Caro, but there are no treatment notes in the record for a visit with Dr. Caro that pre-dates those MRIs. Finally, although Plaintiff testified at the hearing that Dr. Caro prescribed him medical transport, there is no evidence of this in the record.

Defendant does not point to any evidence that the ALJ followed up with Plaintiff or any of his doctors after the hearing to obtain additional records. Indeed, Defendant does not make this argument. Instead, Defendant argues that Plaintiff confirmed the record was complete and that the record was sufficient to determine Plaintiff's disability. (Def.'s Mem. L. Supp. Cross-Mot. J. Pldgs. ("Def.'s Mem.") at 20, ECF No. 23.) Defendant's first point is without merit. It is the ALJ's duty that is at issue here, not Plaintiff's. The ALJ's duty to develop the record would be meaningless if the ALJ were able to discharge that duty simply by asking a pro se plaintiff if the record was complete. Rather it is incumbent upon the ALJ to protect a pro se plaintiff's rights by "scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." *Moran*, 569 F.3d at 113. The ALJ failed in that respect. Regardless of Plaintiff's statement and contrary to Defendant's contention, the record had obvious gaps, as demonstrated above, and clearly was not complete.

Defendant's argument that the record was nevertheless adequate is likewise unavailing. Defendant argues that because Dr. Meisel provided an extensive examination report and opinion, the record was adequate for the ALJ to make a disability determination, and therefore the ALJ did not have to seek additional information. (Def.'s Mem. 19–21.) Not so. Although Dr. Meisel

8

provided an opinion and assessment of Plaintiff's RFC that was based upon Dr. Meisel's examination of Plaintiff, the ALJ could not have adequately assessed whether that opinion was supported or consistent with the record in light of the record's obvious gaps.  And, Dr. Meisel's opinion was rendered only three months into the relevant period.  Furthermore, the ALJ found Dr. Meisel's opinion to be only somewhat persuasive because although Dr. Meisel opined that Plaintiff has only mild limitations, the record reflected more than mild limitations.

Defendant cites *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order), for the proposition that no further development is required where the evidence of record is adequate for the ALJ to make a disability determination.  But *Janes* is distinguishable from the instant action.  First, the plaintiff in *Janes* did not proceed pro se before the ALJ as Plaintiff did here.  *Id.*  Second, in *Janes*, the ALJ had before it over 450 pages of the plaintiff's medical history, including examination reports and opinions from two separate consultative examiners, and at least eight years of treatment records from the Veterans' Administration.  *Id.*  The court held that the ALJ's failure to seek medical records from the Veterans' Administration for the ten months preceding the ALJ's decision did not warrant remand.  *Id.*  Here, the volume of records before the ALJ was comparatively sparse.  Indeed, the only physician indicated to have an ongoing treatment relationship with Plaintiff is Dr. Caro, but the record contained progress notes from only a single visit with that physician.  The record otherwise contained hospital discharge papers from four separate hospital visits, Dr. Meisel's examination report, a disability determination form (based on review of Dr. Meisel's assessment), Human Resources Administration intake forms, an outpatient orthopedic therapy referral, a patient summary from Dr. Caro, imaging reports, and several letters from Dr. Caro stating that Plaintiff is disabled.

This sparse record coupled with the obvious gaps in the record and Plaintiff's pro se status make the instant action distinguishable from *Janes*.[4]

Here, where Plaintiff was proceeding pro se, the ALJ failed to fulfill her heightened duty to develop the record. Remand is warranted on this basis. On remand, the ALJ should conduct further proceedings, including a new hearing, to fully develop the record and should consider the fully developed record in making her determination.

### B. Dr. Caro's Medical Opinion

Plaintiff alternatively argues that remand is warranted because the ALJ failed to seek an opinion from Plaintiff's treating physician Dr. Caro or to provide Plaintiff with an opportunity to obtain a more detailed statement from Dr. Caro.

As a general matter, on the question of whether an ALJ is obligated to seek medical opinions from treating sources, this Court, like the court in *Cameron v. Commissioner of Social Security*, does not believe that the ALJ's duty to develop the record extends to directing treating sources to draft medical opinions not already in the record. *See Cameron v. Comm'r Soc. Sec.*, 537 F. Supp. 378, 380 (E.D.N.Y. 2021) (Cogan, J.) ("I disagree with plaintiff's argument that the ALJ's obligation extended to attempting to have treating providers actually draft opinions that they had not drafted before. My view is that under the regulations, the Commissioner's effort to obtain opinion evidence (as opposed to treatment records) is only with regard to consultants (or

---

[4] That the missing progress notes were later submitted to the Appeals Council (and that the Appeals Council determined that there was not a reasonable probability that they would change the ALJ's decision) does not make the issue of whether the ALJ should have solicited them moot. "Because of the different standards of review by the ALJ and the Appeals Council, a new submission to the Appeals Council is independent of any obligation on the part of the ALJ to obtain more evidence." *Cameron*, 537 F. Supp. 3d at 381 (rejecting Commissioner's argument that because treating physicians' opinions were submitted to the Appeal Council, the issue of whether the ALJ should have solicited them is "moot").

10

to pre-existing treating physician opinions)." (internal citations omitted)). Indeed, the Second Circuit has held that remand based on an ALJ's failure to seek a treating source's opinion is not warranted at least where the record is extensive and includes an assessment of the plaintiff's limitations. *Tankisi*, 521 F. App'x at 34 (holding that remand was not warranted solely on the ground that the ALJ failed to request medical opinions where the medical record did not include formal opinions from the plaintiff's treating sources but was extensive and included an assessment of plaintiff's limitations by her treating physician). In other words, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (quoting *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted) (emphasis added).

However, where the record contains obvious gaps and the ALJ does not have a complete medical history, as is the case here, the ALJ's failure to develop the record, including the failure to obtain, or advise a plaintiff to obtain, a medical opinion from the plaintiff's treating source, may warrant remand. Plaintiff cites to several Second Circuit decisions to support the proposition that remand is appropriate where the ALJ fails to request an opinion from the treating physician. (Pl.'s Mem. at 11; Pl.'s Reply at 1–2, ECF No. 24.) Admittedly, these cases were remanded based, in part, on the ALJ's failure to request an opinion from a plaintiff's treating physician. *See, e.g.*, *Guillen*, 697 F. App'x 107; *Lopez v. Comm'r Soc. Sec.*, 622 F. App'x 59 (2d Cir. 2015); *Cruz*, 912 F.2d at 13; *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751 (2d Cir. 1982); *Hankerson v. Harris*, 636 F.2d 893, 895–96 (2d Cir. 1980). However, in each of the cases Plaintiff cites, remand was not based solely on the ALJ's failure to request a medical opinion or to advise the plaintiff to do so. Rather, the decisions to remand

11

were based on the absence of evidence in the medical record and the ALJ's failure to address those gaps, including the ALJ's failure to obtain, or to advise the plaintiff to obtain, a more detailed statement. Significantly, each of the cases cited by Plaintiff was decided based on some version of the treating physician rule. Here, because Plaintiff filed his applications after March 27, 2017, the treating physician rule does not apply.[5] The Second Circuit has not yet addressed this issue in a case filed after March 27, 2017, and to which the treating physician rule does not apply.

In *Hankerson v. Harris*, the Second Circuit remanded a social security case where it found that the record was "replete with instances where the ALJ should have questioned plaintiff more fully concerning various aspects of his testimony" and 636 F.2d 893, 895–96 (2d Cir. 1980). The court held that the ALJ erred in failing to develop the record an in failing to advise the plaintiff that he should obtain a more detailed statement from his treating physician. *Id.* at 896. Notably, at that time, it was "settled law in this circuit that in the absence of substantial contradictory evidence, the opinion of the claimant's treating physician is binding on the Secretary."[6] *Id*.

---

[5] Because Plaintiff's application was filed after March 27, 2017, the treating physician rule does not apply. Instead, the ALJ's assessment of medical opinions is governed by 20 C.F.R. 404.1520c. Under these new regulations, a treating physician is no longer afforded controlling weight by default, but the ALJ is still required to consider certain factors when weighing medical opinions, including the supportability of the opinion by other evidence in the record, the opinion's consistency with evidence from other sources, and the medical source's relationship with the patient, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the relationship, and whether the source examined the plaintiff. 20 C.F.R. § 404.1520c(c). Consistency and supportability are the two most important factors. 20 C.F.R. § 404.1520c(b)(2).

[6] In 1993, the Second Circuit upheld the Social Security Administration's 1991 regulations and recognized that they afforded treating physicians' opinions less deference than Second Circuit caselaw previously had. Specifically, the regulations afforded treating physicians' opinions substantial weight only if they were "supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) ("by granting the treating physician's opinion 'controlling weight' only if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence,' the regulations accord less deference to

Similarly, in *Echevarria v. Secretary of Health & Human Services*, the Second Circuit identified numerous gaps or issues that the ALJ should have investigated and held that the plaintiff did not "receive a 'fair and adequate hearing before the Secretary.'" 685 F.2d 751, 755–57 (2d Cir. 1982). The court also stated that, as in *Hankerson*, before rejecting the opinions of the treating physicians, "the proper course would have been to direct [the plaintiff] to obtain a more detailed statement from the treating physicians." *Id.* at 756. The court noted that "[although] none of the errors standing alone is sufficient to upset the Secretary's determination, their total effect deprived [the plaintiff] of a full consideration of his claim." *Id.* at 757.

In *Cruz v. Sullivan*, the Second Circuit remanded the case, finding that the pro se plaintiff did not have an adequate hearing. 912 F.2d at 13. This decision was based on the ALJ's failure to develop the record where the "scant record . . . consist[ed] of a thirteen-page transcript [and] reveal[ed] a host of lost opportunities to explore the facts." *Id.* at 11. The court also found that the ALJ's request for additional information, specifically a more detailed explanation of the causes of the plaintiff's inability to work, was insufficient to satisfy the ALJ's duties where the ALJ merely sent a letter and did not advise the plaintiff that he should obtain a more detailed statement. *Id.* at 12. Like *Hankerson* and *Echevarria*, this case was decided under the Second Circuit's more deferential treating physician rule.

In a more recent summary order, *Lopez v. Commissioner of Social Security*, the Second Circuit remanded for two reasons. 622 F. App'x 59 (2d Cir. 2015). Relying on *Cruz* and other cases that were decided under either the more deferential version of the treating physician rule or

---

unsupported treating physician's opinions than do our decisions."). Accordingly, cases decided before the Second Circuit's decision in *Schisler* relied on a more deferential treating physician rule.

13

the treating physician rule then in effect (20 C.F.R. § 404.1527), the court found that before affording little weight to the opinion of a treating physician, the ALJ should have afforded the plaintiff an opportunity to obtain a more detailed statement from that physician. *Id.* at 60–61. Additionally, the court found remand was warranted based on the ALJ's failure to investigate or address an obvious gap in the record. *Id.* at 61. Specifically, the ALJ did not address that the pro se plaintiff testified that she had been hospitalized during a certain time, but the record did not reflect such hospitalization. *Id.*

And, in *Guillen v. Berryhill*, the Second Circuit, by summary order, remanded a case back to the Commissioner for the ALJ to request a medical source statement from the plaintiff's treating physician, as well as a clarification regarding the plaintiff's lupus diagnosis, and to allow the plaintiff to supplement the record with any additional medical records. 697 F. App'x 109. There, the ALJ failed to obtain a medical source statement from the plaintiff's treating physician, or to encourage the plaintiff to do so herself. *Id.* The court found that the ALJ should have taken these steps because, unlike in *Tankisi*, the medical records offered no insight into how the plaintiff's impairments affected her ability to work or undertake activities of daily living, and no other physician had personally examined the plaintiff or opined that she was disabled. *Id.* Furthermore, the court found that the ALJ had improperly rejected the treating physician's diagnosis of lupus as unsupported based on an absence in the medical record of any formal diagnosis or treatment for lupus. *Id.* This was error in light of the treating physician rule, which required the ALJ to fill any clear gaps in the record before rejecting a treating physician's diagnosis. *Id.* The Court remanded on these bases.

Plaintiff also relies heavily on *Peed v. Sullivan*, a district court case that was decided under the old, more deferential treating physician rule. 778 F. Supp. 1241, 1246 (E.D.N.Y.

14

1991) ("The treating physician rule states that the treating physician's opinion on the subject of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence.").  There, the court clearly stated that the ALJ's disregard for the treating physician rule was itself a sufficient basis for remand and noted that "the duty to develop a full record and the treating physician rule—do not operate independently of each other." *Id.*  The court stated that "[b]ecause '[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder,' it is not sufficient for the ALJ simply to secure raw data from the treating physician." *Id.* at 1246.  It further stated:

> when the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

*Id.*  Additionally, in *Peed*, the court noted that the transcript of the hearing revealed that the ALJ demonstrated a distressing lack of interest in the parameters of the plaintiff's ailments and that the ALJ also failed to make clear in his decision the relative weight afforded to reports of various physicians.  *Id.* at 1246–47.  While it is worth noting that *Peed* is not binding on this Court, it is also distinguishable in that it was decided at a time when a treating physician's opinion was binding unless contradicted by substantial evidence and was entitled to "extra weight" even if contradicted by substantial evidence.  That is not the case here, where the treating physician rule no longer applies.

      Plaintiff argues that the ALJ's duty with respect to obtaining a treating physician's opinion should be treated the same under the current regulations as it was under the treating physician rule.  (*See* Pl.'s Mem. at 9.)  But Plaintiff does not cite to cases addressing the ALJ's

15

duty to develop the record or failure to obtain a "treating" physician's medical opinion under the new regulations. (*Id.*) Plaintiff cites to *Drake v. Saul*, a Second Circuit summary order in which the court found that the ALJ failed to justify the weight she assigned to the opinions of various medical sources (both treating and non-treating). 839 F. App'x 584, 586–87 (2d Cir. 2020). Specifically, Plaintiff cites to a footnote where the court stated, in dicta, that the treating physician rule applied in that case, but noted that "there is no meaningful difference between the two versions of the regulations *for the purposes of this case*." *Id.* at 587 (emphasis added). This is not persuasive. Plaintiff further cites to a district court case where Judge Chen quoted the District of Vermont, saying:

> Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any treating source's opinion.

*Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (internal quotation marks and alterations omitted)). This too is unpersuasive.

In any event, having found that remand is warranted based on the ALJ's failure to develop the record in light of obvious gaps, the Court does not reach the question of whether, under the new regulations, the ALJ was obligated to seek a more detailed statement or additional medical opinion from Dr. Caro, or to advise Plaintiff to do so.

## II.     Plaintiff's Other Challenges

Having determined that remand is warranted due to the ALJ's failure to develop the record in light of obvious gaps, the Court need not reach Plaintiff's arguments that remand is

16

required to consider new evidence submitted to the Appeals Council or that the ALJ's RFC determination was not supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is GRANTED, and Defendant's cross-motion for judgment on the pleadings is DENIED. The case is REMANDED for further proceedings consistent with this memorandum and order.

SO ORDERED.

Dated: Brooklyn, New York
       January 25, 2022

/s/ LDH
L SHANN D ARCY HALL
United States District Judge